**No. 57414.**—Gehrig, Hoban & Co., Inc. *v.* United States, protest 172181–K (New York).

MOLLISON, Judge: The merchandise the subject of this protest consists of several invoice items. One item, bearing the identifying number 1352, consists of sets of 12 pencils with variously colored leads, including 1 with a white lead, each set contained in a box. Each pencil bears an identifying number running from No. 2658 to 2669, inclusive, and a sample of the set of 12 pencils, without the box, is before us as plaintiff's exhibit 1, the box being received in evidence separately as defendant's exhibit 1–A. In addition, the protest also covers items of certain of such pencils in bulk, being identified as Nos. 2657, 2663, 2664, 2668, 2669, 2670, and 2671.

The collector of customs assessed duty on the merchandise described above at the rate of 50 cents per gross and 25 percent ad valorem under the provision in paragraph 1549 (a) of the Tariff Act of 1930 which reads as follows:

\* \* \* pencils stamped with names other than the manufacturers' or the manufacturers' trade name or trade-mark \* \* \*.

There is no dispute that the merchandise at bar consists of pencils and that they are stamped with names other than the manufacturer's or the manufacturer's trade name or trade-mark, but it is contended by the plaintiff that they are more specifically provided for under the modification of the foregoing provision of paragraph 1549 (a) contained in the General Agreement on Tariffs and Trade, T. D. 51802, and made effective by the Presidential proclamation reported in T. D. 51898, providing for—

Pencils filled with black lead or with copy or indelible lead, stamped with names other than the manufacturers' or the manufacturers' trade name or trade-mark \* \* \*

with duty assessment at 50 cents per gross and 15 percent ad valorem.

There is no dispute that the pencils at bar are not filled with black lead, and the issue as drawn by the parties is whether or not the said pencils are filled with copy or indelible lead, the plaintiff maintaining the affirmative, and the defendant the negative.

We may say at this point that it appears from the record that although there may be some distinction with respect to quality between copy and indelible leads, they are basically the same thing, and the terms are used synonymously. While the claim that the pencils at bar are filled with copy leads was not abandoned, the effort of the plaintiff during the trial and in the brief has been to establish that the leads in the pencils at bar are indelible leads as commonly and commercially understood in this country.

It is the plaintiff's contention that the term "indelible," as used in the tariff provision, and particularly in connection with the term "lead," refers to a lead which makes marks on paper which are not readily erased by ordinary means, such as a common pencil eraser, and that by this test the leads in the pencils at bar are indelible leads.

It is the defendant's contention that the leads in the pencils at bar are colored leads and not indelible leads, that it is a requisite of indelible leads that they contain a water-soluble dye; and that the leads in the pencils at bar do not contain any dyestuffs.

In support of its contention concerning the meaning of the term "indelible," plaintiff cites in the brief filed in its behalf the following definition of the term "indelible," taken from Webster's New International Dictionary, Second Edition, 1936 and 1950:

That cannot be removed, washed away, blotted out, or effaced; incapable of being canceled, lost, or forgotten; ineffaceable; inerasable; inexpungible; as, an *indelible* stain, impression; also, making marks not readily erased; as, an *indelible* pencil.

Both parties caused physical tests to be made in the courtroom by having witnesses write with one of the pencils, No. 2663, from plaintiff's exhibit 1, upon the surface of an ordinary white paper pad (1) when the surface was dry, and (2) when the surface was first dampened with water, and attempting with the use of a pencil eraser to erase the words thus written. The eraser was received in evidence as plaintiff's exhibit 3–C.

Plaintiff's witness Urmstone, president of the company which was the ultimate consignee of the merchandise at bar, was unsuccessful in erasing either the writing on the dry surface or that on the dampened surface. The result of his effort was received in evidence as plaintiff's exhibits 3–A and 3–B, and the witness stated that he had used the eraser "the same as you would use with any eraser to erase a black lead pencil mark."

Defendant's witness Schlener, a chemist in the employ of a domestic pencil manufacturer, succeeded in erasing one word almost entirely from the dry surface writing on plaintiff's exhibit 3–B, and was only slightly less successful in connection with the dampened surface writing on the same exhibit. He admitted that he had used more pressure than had Mr. Urmstone, and it was noted in the record that the process took a longer time than had been consumed by Mr. Urmstone in his effort to erase.

It is manifest, however, that the difference in success between the attempts by the two witnesses was due to different standards used by each witness as to the amount of pressure and time necessary. Mr. Urmstone based his effort, as noted above, upon that necessary to erase a black lead pencil mark. Mr. Schlener testified that he based his effort upon that normally used "in erasing a colored pencil."

Neither of the standards used by the witnesses was shown to have a common or commercial acceptation, and in our view the experiments do not offer any competent evidence of any fact probative of the contentions of either party, and merely cancel out the effect of each other.

Witnesses for both sides stated that indelible leads contain a water-soluble dye, generally an aniline dye. On the question of whether the leads in the pencils at bar contained such a dye, plaintiff's witness Urmstone stated that they did, but he did not demonstrate any basis of personal knowledge for that statement. On the other hand, defendant's witness Schlener, a chemist, testified that an examination in his laboratory of samples of pencils such as those here involved submitted to him by the customs examiner revealed that they did not contain any dyestuff, and he described a simple test for solubility which he performed which convinced him of that fact.

We are satisfied from an examination of the entire record that plaintiff failed to establish, by a preponderance in weight of the evidence, that the pencils at bar contain copy or indelible lead. Judgment will therefore issue overruling the protest claim accordingly.